**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CEDRIC PIERRE DILLARD, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-09-1373 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND OPINION**

The petitioner, Cedric Pierre Dillard, seeks habeas corpus relief under 28 U.S.C. § 2254. Dillard challenges a disciplinary conviction imposed at the Darrington Unit of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"). Dillard is currently serving a conviction imposed by a state court in Harris County, Texas. The respondent moved for summary judgment. (Docket Entry No. 9). Dillard responded and cross-moved for summary judgment. (Docket Entry No. 11). Based on careful consideration of the pleadings; the motion and response; the record; and the applicable law, this court grants the respondent's motion, denies Dillard's motion, and, by separate order, enters final judgment. The reasons are explained below.

**I.      Background**

      **A.      The Summary Judgment Evidence**

In support of his motion for summary judgment, the respondent submitted the following documents:

      (A)      TDCJ computer records concerning Dillard's criminal conviction.

    (B)    TDCJ records for Dillard's disciplinary case, number 20090039484, with the affidavit of Myra M. Montez.

    (C)    TDCJ records of the grievances Dillard filed about the disciplinary hearing, with the affidavit of Sandra K. Murphy.

    (D)    TDCJ's audio tape recording of the hearing in disciplinary case number 20090039484, with the affidavit of Ernie Kay Miles.

(Docket Entry No. 10).

The record shows that on October 10, 2008, prison officials at the Darrington Unit conducted a hearing in disciplinary case number 20090039484. The hearing officer, Captain Bennett, found Dillard guilty of:

    (1)    possession of two cellular telephones, in violation of Texas Penal Code § 38.11, a Level 1, Code 10.0 offense;

    (2)    possession of marijuana, a Level 1, Code 12.0 offense;

    (3)    possession of alcoholic beverages, a Level 2, Code 13.0 offense; and

    (4)    possession of tobacco products, a Level 2, Code 16.1 offense.

(Docket Entry No. 9, Respondent's Motion for Summary Judgment, Ex. B, p. 2). Dillard's punishment consisted of a loss of commissary privileges for 30 days, a loss of recreation privileges for 30 days, a reprimand, a reduction in line class from state-approved trusty (SAT) 2 to Line 3, and a loss of 450 days good-time credits.

Dillard filed a Step One Grievance on October 13, 2008. Prison officials denied it on November 12, 2008 stating, "Investigation and Review of Major Disciplinary #20090039484 disclosed no procedural errors and sufficient evidence to support the hearing officer's findings.

Therefore, no corrective action is warranted." (Docket Entry No. 10, Disciplinary Grievance Record, p. 2). Dillard filed a Step Two Grievance on December 4, 2008. Prison officials denied this grievance on January 9, 2009, stating, "Major Disciplinary Case #20090039484 has been reviewed. The disciplinary charges of Codes 10.0, 12.0, 13.0 and 16.1 were appropriate for the offense and the guilty verdict was supported by a preponderance of the evidence. All due process requirements were satisfied and the punishment assessed by the Disciplinary Hearing Officer was within agency guidelines. No further action is warranted in this matter." (Docket Entry No. 10, Disciplinary Grievance Record, p. 6).

On May 6, 2009, this court received Dillard's federal petition. Dillard contends that his conviction in disciplinary case 20090039484 is void for the following reasons:

(1)     prison officials violated TDCJ-CID regulations by failing to introduce a photograph of the contraband;

(2)     the finding of guilt was based on evidence obtained through an illegal search and seizure;

(3)     there was insufficient evidence to support the finding of guilt; and

(4)     the punishment imposed was cruel and unusual.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 5-6). The threshold issue is whether Dillard has stated meritorious grounds for federal habeas relief.

## II.     The Legal Standard

This court reviews Dillard's petition for writ of habeas corpus under the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d

409, 413 (5th Cir. 1997), citing *Lindh v. Murphy*, 521 U.S. 320 (1997). Sections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an adjudication on the merits. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000). A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is contrary to Supreme Court precedent if: (1) the state court's conclusion is opposite to that reached by the Supreme Court on a question of law or (2) the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor,* 529 U.S. 362 (2000). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or it unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Id.* at 1495. Questions of fact found by the state court are presumed to be correct and receive deference unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Hill*, 210 F.3d at 485.

A state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under § 2254(e)(1) unless the petitioner rebuts those findings with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact but also to the implicit findings of the state court. *Garcia*, 454 F.3d

at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

Dillard did not present his federal claims for relief in a state application for a writ of habeas corpus. Even if he had done so, that state application would have been dismissed because prison disciplinary challenges are not cognizable on state habeas review. *See Ex parte Brager*, 704 S.W.2d 46 (Tex. Crim. App. 1986) (holding that the Texas Court of Criminal Appeals will not consider challenges to prison disciplinary actions in a state habeas writ).

Rule 56 of the Federal Rules of Civil Procedure relating to summary judgment applies to habeas cases to the extent that it does not conflict with the habeas rules. *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000). Section 2254(e)(1) which mandates that findings of fact made by a state court are presumed to be correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can rebut by clear and convincing evidence the presumption of correctness given to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Dillard is proceeding *pro se*. A *pro se* habeas petition is construed liberally and not held to the same stringent and rigorous standards as pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Dillard's federal habeas petition. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

**III.     The Due Process Claim**

    **A.     The Applicable Standard**

In *Wolff v. McDonnell,* 418 U.S. 539, 563-66 (1974), the Supreme Court held that the standards governing a disciplinary proceeding depend on the sanction imposed and the consequences. A prisoner punished by solitary confinement and loss of good-time credits is entitled to: (1) written notice of the charges against him at least twenty-four hours before the hearing; (2) a written statement of the fact finders as to the evidence relied on and the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present documentary evidence in his defense, unless these procedures would create a security risk in the particular case. When the punishment has no effect on the time to release, such as a short period of administrative segregation, an inmate is entitled to notice and an opportunity to present a statement in an informal nonadversary evidentiary review. *Hewitt v. Helms*, 459 U.S. 460 (1983); *Walker v. Navarro County Jail,* 4 F.3d 410, 412 (5th Cir. 1993).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the Supreme Court held that State-created liberty interests applicable to prisoners, protected by the Due Process Clause, are generally limited to regulations or statutes that determine the quantity, rather than the quality, of time a prisoner serves. The Due Process Clause does not protect against every change in the conditions of confinement that has a substantial adverse effect upon a prisoner. *Id.* at 478. A disciplinary conviction punished by a loss of good-time credits that increases the sentence the prisoner otherwise would have received under state laws providing mandatory sentence reductions for good behavior must be accompanied by certain procedural safeguards to satisfy due process. *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997). Only state-created substantive interests that "inevitably affect the duration of [a

prisoner's] sentence" qualify for constitutional protection under the Due Process Clause. *Sandin,* 515 U.S. at 487. *See also Orellana v. Kyle,* 65 F.3d 29, 31-32 (5th Cir. 1995).

**B.     Analysis**

To the extent that Dillard attempts to assert a due process claim based on the loss of recreation and commissary privileges, his claims are barred. The thirty-day restriction on commissary and recreation privileges is not the type of "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 486 n.9. The punishment changed the conditions of Dillard's confinement but did not give rise to a due process claim. *Madison,* 104 F.3d at 767-68.

Dillard may complain that the reduction in his good-time earning class status creates a due process violation. A Texas state prisoner becomes eligible for early release from confinement either by parole or mandatory supervision. *See* TEX. GOV'T CODE § 508.001(5)-(6) (Vernon 2004). Release on parole is wholly discretionary. By contrast, an inmate's release to mandatory supervision is required, subject to certain exceptions, when the "actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." *Id.* at § 508.147(a); *Jackson v. Johnson,* 475 F.3d 261, 263, n.1 (5th Cir. 2007).

A Texas state prisoner such as Dillard has no constitutional right to be released on parole. *Orellana v. Kyle,* 65 F.3d 29, 32 (5th Cir. 1995); *Creel v. Keene,* 928 F.2d 707 (5th Cir. 1991); *Madison,* 104 F.3d at 768 (citing TEX. CODE CRIM. P. ANN. art. 42.18, § 8(a)). Because a prisoner has no constitutionally protected liberty interest in obtaining parole in Texas, he cannot complain of a denial of due process in a delay in release to parole. *Allison v. Kyle,* 66 F.3d 71, 73-74 (5th Cir.

1995) (citing *Orellana,* 65 F.3d at 32). Any argument that Dillard is entitled to be considered for release on parole at a particular time lacks merit.

Dillard may argue that if he had remained at the good-time earning status of SAT 2 rather than Line 3, he would have had an opportunity to earn good-time credits that might have led to an earlier release on parole. The change in Dillard's good-time earning status does not mean that he has lost good-time credits. Dillard's diminished ability to earn good time credits, without more, is not a due process violation. *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995), *cert. denied*, 517 U.S. 1196 (1996)( the mere opportunity to earn good-time credits does not constitute a constitutionally cognizable liberty interest sufficient to trigger the protection of the due process clause). The possibility that an inmate's good-time earning status will affect the timing of his release is too speculative to give rise to a constitutionally protected right to a particular time-earning status. *Id.*

Dillard also alleges that the punishment he received has delayed his release to mandatory supervision. Dillard is eligible for release to mandatory supervision for his sentence for possession with intent to deliver cocaine. (Docket Entry No. 1, Federal Petition, p. 2). Dillard lost 450 days of good-time credits. In *Malchi v. Thaler,* 211 F.3d 953, 957-58 (5th Cir. 2000), the Fifth Circuit held that there is a constitutional expectancy of early release for earned good-time credits created by the Texas mandatory supervision scheme in place before September 1, 1996. *Id.* at 958. *Malchi* was decided under the Texas mandatory supervision law in place before September 1, 1996. On that date, the law changed to provide for a discretionary mandatory supervision scheme. *See* TEX. GOV'T CODE ANN. § 508.149(b) (Vernon Supp. 2003). Both the Fifth Circuit and the Texas courts have held there is a protected liberty interest under the mandatory supervision law in effect after September 1, 1996. *Teague v. Quarterman,* 482 F.3d 769, 777 (5th Cir. 2007); *Ex parte Geiken,* 28

S.W.3d 553, 558 (Tex. Crim. App. 2000). Because Dillard is eligible for release on mandatory supervision, he was entitled to the due process protections established by the Supreme Court in *Wolff*.

### C. The *Wolff* Due Process Requirements

The summary judgment evidence shows that on October 9, 2008, Officer Fitchett charged Dillard with possession of cellular phones, Level 1, Code 10.0; possession of marijuana, Level 1, Code 12.0; possession of alcoholic beverages, Level 2, Code 13.0; and possession of tobacco products, Level 2, Code 16.1. (Docket Entry No. 10, Disciplinary Hearing Record, p. 1). The offense report charged Dillard with possessing two cellular telephones and two cellular phone chargers, a felony under Art. 38.11 of the Texas Penal Code. The offense report also charged Dillard with possessing two bags of a leafy substance that field-tested positive for marijuana, three water bottles filled with a clear liquid that smelled like vodka, 25 cans of Grizzly Wintergreen chewing tobacco, and 98 packages of Bugler tobacco.

Dillard received notification of the charges on October 9, 2008 at 11:45 a.m. *Id.* at 1. Counsel substitute was appointed to represent Dillard because he was in prehearing detention. The counsel substitute, Miles, interviewed Dillard on October 9, 2008. During the prehearing investigation, Dillard told Miles that he did not want to call any witnesses. (Docket Entry No. 10, Disciplinary Hearing Record, p. 3). In her prehearing investigation, Miles interviewed Officer Fitchett about his discovery of contraband in three laundry bundles placed in a laundry cart by Dillard and two other inmates. (Docket Entry No. 10, Disciplinary Hearing Record, p. 4). Officer Fitchett also prepared an interoffice communication about the contraband he had discovered. (Docket Entry No. 10, Disciplinary Hearing Record, pp. 9-10). In the memo, Officer Fitchett

explained that on October 4, he two inmates to the waste-water well facility and three inmates, including Dillard, to the back gate of the main building. These three inmates worked in the front office. The three inmates got out of the van, walked toward the empty laundry cart, and put three bundles into the cart. Officer Fitchett opened the gate, and all three inmates struggled to push the cart through the gate. At 6:48 a.m., Officer Fitchett strip-searched all three men. After this search, all three began walking toward the laundry cart. Officer Fitchett ordered them to stop, and he searched the laundry cart. Officer Fitchett found four packets of tobacco in one bundle. Officer Fitchett ordered the three inmates to go to work. Officer Fitchett took the remaining bundles to Sergeant Thibeaux at the trusty camp. At 6:52 a.m., Sergeant Thibeaux and Officer Fitchett found the remaining contraband. (*Id.*).

Captain Bennett conducted the disciplinary hearing on October 10, 2008 at 11:45 a.m. (*Id.* at 1). Counsel substitute represented Dillard, who was present during the entire hearing. At the hearing, Dillard asked to call Officer Byers as a witness. Byers testified that Officer Fitchett had found contraband in the laundry cart. At Dillard's request, Captain Bennett asked Byers if he saw Officer Fitchett recover contraband from Dillard's person. Officer Byers stated that Officer Fitchett did not find any contraband on Dillard's person. Officer Byers stated that "somebody tried to grab some laundry to take it in and Fitchett said he'll take that." (Docket Entry No. 10, Disciplinary Hearing Tape).

At the hearing, Officer Fitchett testified that he picked up five inmates from the trusty camp. He dropped two inmates off and drove the remaining three inmates, including Dillard, to the back gate of the main building. He testified that the three inmates put the three bundles of dirty laundry into the cart. Officer Fitchett searched the inmates and then the cart containing the dirty laundry.

Officer Fitchett did not find any contraband on Dillard's person. Officer Fitchett stated that except for the three inmates, no other inmates were present at the back gate. He testified that all three inmates pushed the large cart through the back gate, and all three inmates handled the laundry from the van to the cart.

Counsel substitute Miles read Dillard's statement at the hearing. Dillard explained that he left for work at 6:05 a.m. He walked to the shed and saw Officer Fitchett. At 6:15 a.m., Officer Fitchett asked if Dillard was the only inmate going to work that morning. Dillard responded that Inmate Lester was also going to work. Lester told Officer Fitchett that Inmate Caldwell was also going to work. At 6:20 a.m., a laundry attendant approached Officer Fitchett, who went to unlock the van. The laundry attendant loaded the laundry into the van. At 6:30 a.m., inmates Caldwell, Lester, and Dillard entered the van. Dillard rode in the front passenger seat. Officer Fitchett picked up and dropped off two other inmates. At the back gate, Officer Fitchett and Dillard got out of the van. Dillard opened the door for the other inmates and started walking toward the gate. Officer Fitchett told Officer Byers to open the gate, and Dillard walked into the holding area. Dillard stated that he did not know who took the laundry from the van and placed it in the cart. Someone pushed the cart into the holding area. Officer Fitchett searched the cart, found something, then strip-searched all three inmates. Dillard denied handling the laundry or seeing inmates Lester and Caldwell do so. (Docket Entry No. 10, Disciplinary Hearing Record, pp. 6-7).

In finding Dillard guilty of the charged offense, Captain Bennett stated that he had considered the charging officer's testimony. (Docket Entry No. 10, Disciplinary Hearing Record, p. 1). Captain Bennett explained that the punishment was appropriate because possessing cell phones, marijuana, alcohol, and tobacco products in prison was a felony. (*Id*.). Because he was in

hand restraints, Dillard did not sign the disciplinary hearing report. (Docket Entry No. 2, Petitioner's Memorandum, Attachment 2, p. 1).

Dillard had sufficient notice of the charges. Counsel substitute investigated and presented the results of that investigation in the disciplinary hearing. Dillard was present at the hearing, made a statement, and questioned the charging officer. Dillard received a written statement by the fact-finder of the evidence and the reason for the disciplinary action. The process he received meets the *Wolff* requirements. Dillard has not shown a due process violation that would support the relief he seeks. *See Wolff,* 418 U.S. at 563-66. His due process claim is without merit.

### D.     The Claim of Insufficiency of the Evidence

In his third ground for habeas review, Dillard alleges that the evidence was insufficient to support the hearing officer's finding of guilt. Dillard argues that the contraband was not found in his possession or under his control. Dillard points out that Fitchett strip-searched him and found no contraband and that Fitchett stated that he did not know who put the laundry bundles in the transport van.

The standard applied in reviewing a prison disciplinary decision is whether the committee's actions were arbitrary and capricious or an abuse of discretion. *Smith v. Rabalais*, 659 F.2d 539, 545 (1981)(citing *Thomas v. Estelle,* 603 F.2d 488, 490 (5th Cir. 1979)). The results of a prison disciplinary hearing will not be disturbed unless they are arbitrary and capricious. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). Due process are satisfied if some evidence supports the decision of the prison disciplinary board to revoke good-time credits. *Superintendent v. Hill,* 472 U.S. 445, 455 (1985). As the Supreme Court has explained:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

*Id.* at 455-56; *Gibbs v. King,* 779 F.2d 1040, 1044 (5th Cir.), *cert. denied,* 476 U.S. 1117 (1986). If there are some facts or any evidence that supports the action taken by prison officials, the decision must be upheld on federal habeas review. *See Banuelos*, 41 F.3d at 234; *Gibbs*, 779 F.2d at 1044; *see also Black v. Warren*, 134 F.3d at 734 (5th Cir. 1998); *Sweeney*, 113 F.3d 732, 734 (5th Cir. 1998). Prison disciplinary proceedings "will be overturned only where there is no evidence whatsoever to support the decision of the prison officials. A de novo factual review is not required." *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994)(citing *Smith,* 659 F.2d at 545); *Stewart v. Thigpen,* 730 F.2d 1002, 1005-06 (5th Cir. 1984).

Applying this standard defeats Dillard's complaint of insufficient evidence. Dillard has not shown that the disciplinary hearing officer acted arbitrarily or capriciously. There was ample evidence to support the hearing officer's finding of guilt. Dillard makes only conclusory allegations that he was innocent. These conclusory allegations fail to establish a violation of Dillard's constitutional rights. Dillard's claims fail on federal habeas review.

## IV. The Claim Based on a Violation of the Fourth Amendment

Dillard argues that he was illegally seized and placed in prehearing detention. Dillard asserts that the contraband items were not found on his person or in any place under his control. The search and seizure claim fails. Dillard is precluded from relitigating his Fourth Amendment claim in this federal habeas proceeding because he had an opportunity to litigate that claim in the disciplinary proceeding. *Stone v. Powell,* 428 U.S. 465, 494 (1976). Under *Stone,* search and seizure claims are precluded unless the petitioner presents sufficient allegations that the processes provided by the State to litigate Fourth Amendment claims are routinely or systematically applied to prevent the litigation of the claims on their merits. *Williams v. Brown,* 609 F.2d 216, 220 (5th Cir. 1980). If the state proceeding record shows that the petitioner had a fair opportunity to challenge the introduction of evidence, a federal habeas court will not reexamine the Fourth Amendment issue. *Billiot v. Maggio,* 694 F.2d 98, 100 (5th Cir. 1982). Dillard has not shown that the prison's process of litigating Fourth Amendment claims was routinely or systematically applied in such a way as to prevent actual litigation of such claims or that it was so applied in his case. He had an opportunity to raise these arguments in the prison disciplinary and grievance procedure. *Stone,* 428 U.S. at 494 (1976). *Stone v. Powell* applies. *Andrews v. Collins,* 21 F.3d 612, 631-32 (5th Cir. 1994); *Christian v. McKaskle,* 731 F.2d 1196, 1199 (5th Cir. 1984).

Even if this claim was not barred by *Stone*, it would not provide a basis for the relief Dillard seeks. Dillard claims that Officer Fitchett violated his Fourth Amendment right by searching the laundry cart and discovering the contraband. Dillard's Fourth Amendment argument depends on whether he had a reasonable expectation of privacy in the laundry cart. *Katz v. United States,* 389 U.S. 347, 360 (1967) (Harlan, concurring). This requires "first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is

prepared to recognize as 'reasonable.'" *Id.* at 361.

In *Hudson v. Palmer,* 468 U.S. 517, 525 n.7 (1984), the Court held that because a prisoner has no expectation of privacy in his prison cell, the Fourth Amendment does not restrict searches and seizures in the cell. The Court found the privacy right irreconcilable with both the institutional concern of security in the prison and with the punitive objectives of incarceration. One of security concerns is the presence of contraband. The disciplinary record shows that Officer Fitchett searched the laundry cart as a routine search for contraband at the prison. At the time of the search, Dillard was being transported from the trusty camp of the Darrington Unit to the main building where he worked in the front office. Dillard had no expectation of privacy that made the search of the laundry basket unconstitutional. Dillard is not entitled to the relief he seeks.

## V.     The Claim of a Failure to Comply with Prison Regulations

Dillard asserts that prison regulations require that any contraband items that are not physically presented at a disciplinary hearing must be photographed and introduced at the hearing. He alleges that Captain Bennett failed to produce a photograph of the contraband at the hearing. This claim presents no basis for relief. Fifth Circuit case law is clear that an official's failure to follow the prison's policies, procedures, or regulations is not, standing alone, a due process violation. *Giovanni v. Lynn,* 48 F.3d 908, 912-13 (5th Cir.), *cert. denied,* 516 U.S. 860 (1995); *Murphy v. Collins,* 26 F.3d 541, 543 (5th Cir. 1994); *Meyers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996). Nor does a prison official's failure to follow state regulations establish a constitutional violation. *See Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989). Even if the hearing officer violated regulations in conducting the hearing, Dillard has not shown a constitutional violation.

The disciplinary record refutes Dillard's claims of a violation of a prison rule or regulation.

The summary judgment evidence shows that Officer Fitchett photographed the contraband. (Docket Entry No. 10, Disciplinary Hearing Record, p. 4). The disciplinary hearing record includes an October 4, 2008 photograph of the cellular phones, tobacco, bottles of alcohol, chewing tobacco, and bag of marijuana. (*Id*. at 13).

Dillard is not entitled to habeas relief on this claim.

**VI.    The Claim Based on an Excessive Sentence**

Dillard argues that his punishment was excessive and violated the Eighth Amendment. Dillard was punished with a reduction in good-time earning class status from SAT 2 to Line 3, placed in G5 Close Custody, and lost 450 days good-time credit. He lost his status as a trusty inmate, which gave more privileges than a close-custody inmate.

To determine whether a sentence is disproportionate, a court weighs the gravity of the offense against the severity of the sentence. If the court determines that the sentence is grossly disproportionate to the offense, it compares the sentence to sentences for similar crimes in the same jurisdiction and sentences for the same crime in other jurisdictions. *McGruder v. Puckett,* 954 F.2d 313 (5th Cir. 1992). Dillard was found guilty of two Level 1 offenses – possession of two cellular telephones in violation of Texas Penal Code § 38.11, and possession of marijuana. The possession of two cellular telephones was a Level 1, Code 10.0 offense. The punishment for this offense had no limit on the amount of good-time credits that could be forfeited. An offender's time-earning class status could not be reduced more than two levels for each offense. Dillard was also found guilty of two Level 2 offenses – possession of alcoholic beverages and possession of tobacco products. The maximum punishment for this offense was the forfeiture of 730 days of good-time credits. Dillard was also found guilty of possessing marijuana, one bag weighing 4 ½ ounces and another bag

weighing 3/4 ounces.  (Docket Entry No. 10, Disciplinary Hearing Record, p. 8).  Possession of this amount of marijuana is a state jail felony. TEX. HEALTH & SAFETY CODE § 481.121(b)(3).  If convicted of a state jail felony, Dillard faced a ten-year sentence, enhanced by his prior felony conviction. *See* TEX. PENAL CODE §§ 12.34(a) and 12.35(a) and (c).

Based on the evidence at the disciplinary hearing and the maximum punishment available, Dillard has not shown that the loss of 450 days good-time credits and reduction in good-time earning class status, along with loss of privileges, was grossly disproportionate to the offense.  *See United States v. Gonzales,* 121 F.3d 928, 942 (5th Cir. 1997); *McGruder v. Puckett,* 954 F.2d at 315-16 (5th Cir. 1992).  Dillard is not entitled to habeas relief on this claim.

## VII.    Conclusion

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Christopher Village, L.P. v. Retsinas,* 190 F.3d 310, 314 (5th Cir. 1999).  [T]he substantive law will identify which facts are material.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The pleadings and prison records show that Dillard's federal petition fails to state a ground for habeas relief.

The respondent's motion for summary judgment, (Docket Entry No. 9), is granted.  Dillard's motion for summary judgment, (Docket Entry No. 11), is denied.  Dillard's petition for a writ of habeas corpus is denied.  Any remaining pending motions are denied as moot.

The Supreme Court has stated that the showing necessary for a Certificate of Appealability is a substantial showing of the denial of a constitutional right.  *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)).  Under that standard,

an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. *See Clark v. Johnson,* 202 F.3d 760, 763 (5th Cir. 2000). When, as here, a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack,* 529 U.S. 484. This court has denied Dillard's petition after careful consideration of the merits of his constitutional claims. This court denies a COA because Dillard has not made the necessary showing for issuance.

SIGNED on July 30, 2010, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge